**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ROBERT BARNETT, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-03-5179 |
| | § | |
| DOUGLAS DRETKE, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND OPINION**

Petitioner, Robert Barnett, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging the 2002 revocation of his release on mandatory supervision. On November 24, 2003, this court dismissed Barnett's petition for failure to exhaust available state court remedies. (Docket Entry No. 4). On December 9, 2003, Barnett filed a motion for reconsideration on the basis that he had filed a state habeas application challenging his 2002 parole revocation. (Docket Entry No. 6). On March 24, 2004, this court granted Barnett's motion for reconsideration and reinstated this case. (Docket Entry No. 8).

Respondent has filed a motion for summary judgment, (Docket Entry No. 12), and a copy of the state court record. Petitioner has filed a cross-motion for summary judgment. (Docket Entry No. 16). Based on the pleadings, the motion, the record, and the applicable authorities, this court grants respondent's motion and denies petitioner's cross-motion and, by separate order, enters final judgment. The reasons for these rulings are stated below.

**I.     Background**

Barnett pleaded guilty to the felony offense of aggravated sexual assault of a child. (Cause Number 18,610). On November 11, 1985, the court sentenced Barnett to fifteen years imprisonment. The Texas Board of Pardons and Paroles ("Board") released Barnett on mandatory supervision on December 23, 1999.[1] The Board issued a blue warrant for Barnett's arrest on April 22, 2002, charging Barnett with violating the following conditions of his mandatory supervision: not to contact anyone seventeen years of age or younger in person; not to become closely involved with any person who has children seventeen years or younger; and not to go in, on, or within 500 feet of premises where children commonly gather.

The Board conducted a revocation hearing on May 6, 2002. Barnett did not testify. A woman named Kelly Russell testified that she had been involved in a relationship with Barnett for one and one-half months. Russell testified that she had two daughters, ages four and twelve, who lived with her. Barnett had had nearly daily contact with her daughters during the relationship. Russell's sister-in-law, Carolyn Adams, testified that she was present at the Russell home on April 5, and 6, 2002. Barnett was there, as were Russell's two daughters. Tanalyn Hartless testified that on April 5, 2002, she left her thirteen month old

---

[1] The Board previously released Barnett on mandatory supervision on January 25, 1990. The Board revoked Barnett's mandatory supervision on April 30, 1997. Barnett challenged the loss of good time credit following the revocation of his mandatory supervision, and the Texas Court of Criminal Appeals denied relief on July 29, 1998.

son at the Russell home, and Barnett was present. Hartless also saw Russell and Barnett at a girls' softball game on April 23, 2002.

The Board revoked Barnett's release on mandatory supervision on May 13, 2002. Barnett filed a motion to reopen the revocation hearing on May 24, 2002. The Board denied the motion on September 18, 2002. Barnett filed a state habeas application on February 18, 2003, which the Texas Court of Criminal Appeals denied without written order on September 17, 2003. *Ex parte Barnett,* Application No. 36,940-02 at cover.

On November 10, 2003, this court received Barnett's federal petition. Barnett contends that his mandatory supervision revocation is void for the following reasons:

(1) His arrest, revocation of mandatory supervision, and reincarceration are illegal because he was not in privity with TDCJ-CID and the Board because he refused to sign the certificate of mandatory supervision before his release.

(2) He was deprived of credit for calendar time served on mandatory supervision, in violation of the prohibition against bills of attainder.

(3) His sentence was extended illegally as a result of the Board's revocation of his mandatory supervision, in violation of the separation of powers doctrine, the prohibition against double jeopardy, and his right to due process and equal protection.

(4) The Board violated the prohibition against ex post facto laws by changing the rules and regulations with respect to mandatory supervision.

(5)   The Board violated his due process rights when they refused to provide him with appointed counsel for the revocation hearing.

(6)   The Board violated his due process rights when they denied his application to reopen the revocation hearing.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 7-9). Each claim is analyzed below.

## II.   The Applicable Legal Standards

Barnett's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Subsections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits." An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

Under the AEDPA, the prism of the substantive evidentiary burden differs depending upon whether the issue is one of law, fact, or both. *See Drinkard,* 97 F.3d at 767-68. The AEDPA provides as follows, in pertinent part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

4

>established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)

>(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. In deciding whether a state court's application was unreasonable, this court

5

considers whether the application was "objectively unreasonable." *Id.* at 1495; *Penry v. Johnson,* 215 F.3d 504, 508 (5th Cir. 2000). Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill,* 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules. Section 2254(e)(1) -- which mandates that findings of fact made by a state court are "presumed to be correct" -- overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, they must be accepted as correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Barnett is a *pro se* petitioner. In this circuit, *pro se* habeas petitions are liberally construed. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981); *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

### III. Analysis

To the extent that Barnett's claims are based on violations of state law, he does not state a basis for federal habeas relief. A state prisoner seeking federal court review of his conviction or sentence under 28 U.S.C. § 2254 must assert a violation of a federal constitutional right. *Fierro v. Johnson,* 197 F.3d 147, 156 (5th Cir. 1999). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). The question before a federal habeas corpus court is not whether the state court correctly applied its own interpretation of state law; rather, the question is whether the petitioner's federal constitutional rights were violated. *Neyland v. Blackburn,* 785 F.2d 1283, 1293 (5th Cir.), *cert. denied*, 479 U.S. 930 (1986); *Coleman v. Thompson,* 501 U.S. 722, 730 (1991).

#### A. The Claim Based on Lack of Privity

Barnett asserts that he refused to sign the "contract" setting out the conditions of his mandatory supervised release before his release on mandatory supervision on December 23, 1999. Barnett argues that there was no valid agreement between him and the State of Texas, making his revocation improper. Barnett's claim to habeas relief on this ground is frivolous as a matter of law.

At the time of Barnett's release on mandatory supervision, section 508.154 of the Texas Government Code provided in part:

> (a) An inmate to be released on parole shall be furnished a contract stating in clear and intelligible language the conditions and rules of parole.

7

>    (b)   Acceptance, signing, and execution of the contract by the inmate to be paroled is a precondition to release on parole.
>
>    (c)   An inmate released to mandatory supervision shall be furnished a written statement stating in clear and intelligible language the conditions and rules of mandatory supervision.
>
>    (d)   A releasee while on parole or mandatory supervision must be amenable to the conditions of supervision ordered by a parole panel.

This statute clearly differentiates the requirements related to release on parole from those relating to mandatory supervision. An inmate released on parole was required to sign a contract of release. There was no such requirement for a person released to mandatory supervision. Barnett was released on mandatory supervision. He acknowledges that he was provided with a written statement of the conditions of his release. The fact that Barnett did not sign the statement is without consequence. Barnett would have been released under the conditions imposed, with or without his signature. Moreover, Barnett alleges no federal or constitutional violation. Barnett is not entitled to habeas relief on this ground. *Thomas v. Torres*, 717 F.2d 248, 249 (5th Cir. 1983), *cert. denied*, 465 U.S. 1010 (1984).

### B.   The Claim Based on the Denial of Credit for Time Served on Mandatory Supervision

Barnett argues that he was unlawfully denied credit for the time that he spent on mandatory supervision. When parole, mandatory supervision, or conditional pardon is revoked, the defendant may be required to serve the portion remaining of the sentence on which he was released. That portion is to be calculated without any credit for the time from release to revocation. *See* TEX. CODE CRIM. PROC. ANN. art. 42.18 § 14(a) (West 1997);

*Cortinas v. United States Parole Comm'n,* 938 F.2d 43, 46 (5th Cir. 1991) (rejecting a challenge to a similar federal statute); *Morrison v. Johnson*, 106 F.3d 127, 129 n.1 (5th Cir. 1997).

Under Texas law, certain offenders who have their parole or mandatory supervision revoked on or after September 1, 2001, are credited for time they spend on parole or mandatory supervision, *i.e.,* street time credit.[2] The Fifth Circuit has held that this amendment may have created a protected liberty interest in the retention of street time by

---

[2] Section 508.283 provides, in relevant part:

> (b) If the parole, mandatory supervision, or conditional pardon of a person described by Section 508.149(a) is revoked, the person may be required to serve the remaining portion of the sentence on which the person was released. The remaining portion is computed without credit for the time from the date of the person's release to the date of revocation.
>
> (c) If the parole, mandatory supervision or conditional pardon of a person other than a person described by Section 508.149(a) is revoked, the person may be required to serve the remaining portion of the sentence on which the person was released. For a person who on the date of issuance of a warrant or summons initiating the revocation process is subject to a sentence the remaining portion of which is greater than the amount of time from the date of the person's release to the date of issuance of the warrant or summons, the remaining portion is to be served without credit for the time from the date of the person's release to the date of revocation. For a person who on the date of issuance of the warrant of summons is subject to a sentence the remaining portion of which is less than the amount of time from the date of the persons release to the date of issuance of the warrant or summons, the remaining portion is to be served without credit for an amount of time equal to the remaining portion of the sentence on the date of issuance of the warrant or citation.

TEX. GOV'T CODE ANN. § 508.283(b), (c) (Vernon Supp. 2004) (emphasis added).

9

prisoners who had their release revoked after September 1, 2001. *See Whitley v. Dretke*, No. 04-20392, WL 1895117 (5th Cir. Aug. 25, 2004). Barnett cannot make this claim, however, because he was previously convicted of a first-degree felony of aggravated sexual assault. Under section 22.021 of the Texas Penal Code, he is ineligible for mandatory supervision. Specifically, he is "a person described by Section 508.149(a)."

Section 508.149(a), entitled "Inmates Ineligible for Mandatory Supervision," provides in relevant part:

> (a)  An inmate may not be released to mandatory supervision if the inmate is serving a sentence for or has been previously convicted of:
>  . . .
> (8)  a first degree felony under Section 22.021, Penal Code;

*Id*. § 508.149(a)(8).

Barnett is not entitled to credit for the time he spent on mandatory supervision. His habeas claim on this basis fails.

        **C.**     **The Claim Based on Violation of the Ex Post Facto Clause**

Barnett also claims a violation under the Ex Post Facto Clause of the Constitution. To constitute a violation of the Ex Post Facto Clause, a change in law "must be both retroactive and to a prisoner's detriment." *See Hallmark v. Johnson*, 118 F.3d 1073, 1077-78 (5th Cir. 1997); *see also, Lynce v. Mathis*, 519 U.S. 433, 441 (1997) ("To fall within the ex post facto prohibition, a law must be retrospective -- that is, 'it must apply to events occurring before its enactment' – and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime."). The

courts "must decide if the change disadvantaged the prisoners affected by it to a degree of ex post facto significance." *Hallmark*, 118 F.3d at 1078. In other words, the courts "must determine whether [the change] produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *California Dep't of Corrections v. Morales*, 514 U.S. 499, 509 (1995).

Barnett alleges that the State of Texas has added time to his sentence by not crediting him for time spent on mandatory supervision in calculating when his fifteen-year sentence expires. That sentence was imposed in 1985. Texas law has provided at least since 1983 that a person is not entitled to credit for "street time" or "flat time" following revocation of parole or mandatory supervision. Acts 1983, 68th Leg., p. 978, ch. 232, § 5. The denial of credit for time on mandatory supervision did not increase Barnett's punishment for the offense of aggravated sexual assault beyond what was prescribed when the crime was committed. Barnett still must serve the same fifteen-year sentence imposed by the trial court and permitted by Texas law at the time of the offense. There is no ex post facto violation that provides a basis for habeas relief.

### D. The Claim Based on Violation of the Double Jeopardy Clause

Barnett argues that requiring him to serve the entire portion remaining on his sentence after his mandatory supervision was revoked violates the multiple punishments prong of the Double Jeopardy Clause. This argument is also without merit. *Cortinas,* 938 F.2d 43, 46-47 (declining to extend double jeopardy protections to parole revocation proceedings). Barnett is not entitled to habeas corpus relief on this claim.

11

Apparently referring to Texas Code of Criminal Procedure art. 42.12, § 15(b), amended as art. 42.18, Barnett argues that he has been subjected to a bill of attainder in violation of the United States Constitution. U.S. CONST. art. 1, § 9, cl. 3. Barnett cannot show that the Texas Legislature sought to deprive him of his liberty without a judicial trial when it passed article 42.12, section 15(b). This statute is not a bill of attainder. The state court's decision to deny relief on this claim was not contrary to clearly established federal law, as determined by the Supreme Court of the United States. Barnett's claim is without merit. 28 U.S.C. § 2254(d)(1).

## IV.     The Claim Based on a Denial of Due Process

Barnett complains that his right to due process was violated during the mandatory supervision revocation hearing. In *Morrissey v. Brewer,* 408 U.S. 471 (1972), the Supreme Court held that the constitutional right to procedural due process attaches to parole revocation hearings, but recognized that "the concept of due process is flexible," but that its flexibility "is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Id.* at 481. The Court outlined minimum constitutional requirements for the parole revocation process. First, states must conduct a preliminary hearing to determine "whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." 408 U.S. at 485. Because there may be a substantial lag time between the parolee's arrest and the determination whether parole should be revoked, the Court recognized the need for "some minimal inquiry" which would take place "as promptly as

12

convenient" to determine whether the parolee should be incarcerated pending a final determination by the parole board. The Court stated that the following should occur at the preliminary hearing stage:

> [1] The parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged. [2] At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. [3] On request of the parolee, persons who have given adverse information on which parole revocation is to be based are to be made available for questioning in his presence. However, if the hearing officer determines that the informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.

*Id.* at 486-87.

The Court also stated that if the State determines that there is probable cause for believing the parolee violated the terms of his parole, the State must afford the parolee (if he or she so chooses) a final revocation hearing. The purpose of that hearing goes beyond a determination of probable cause "to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." 408 U.S. at 438. At this stage, the Due Process Clause requires:

> [1] written notice of the claimed violations of parole; [2] disclosure to the parolee of evidence against him; [3] opportunity to be heard in person and to present witnesses and documentary evidence; [4] the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); [5] a "neutral and detached" hearing body such as a traditional

>       parole board, members of which need not be judicial officers or
>       lawyers; and [6] a written statement by the factfinders as to the
>       evidence relied on and reasons for revoking parole.

*Id.* at 489.

The Court stressed that the final revocation hearing should be a "narrow inquiry," yet sufficiently flexible so that the parole board may "consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* The goal always is to ensure that "the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* at 484. In *Pennsylvania Board of Probation and Parole v. Scott*, 524 U.S. 357 (1998), the Supreme Court held that the exclusionary rule does not apply to parole revocation proceedings. *Id.* at 365-66.

The record demonstrates that Barnett received a revocation hearing which fulfilled the due process requirements set out in *Morrissey*. On May 1, 2002, Barnett received written notice of the alleged violations of the conditions of his mandatory supervision. *Ex parte Barnett*, at 102-103, 176-179. Barnett attended his revocation hearing on May 6, 2002. He admitted five of the six alleged violations of his mandatory supervision. *Id.* He denied one allegation – being present on premises where children commonly gather. Tanalyn Hartless testified that she attended a girls' softball game on April 23, 2002, and Barnett was present. *Id.* at 109. Barnett had an opportunity to question Hartless. Barnett was presented with the evidence against him, which included the certificate of mandatory supervision, statements by Kelly Russell, Carolyn Adams, and Tanalyn Hartless, an adjustment statement, and

Barnett's admissions. *Id*. at 107. Barnett declined to testify at the hearing. His mother, June Barnett, and his employer, Frank James, testified on his behalf. *Id*. at 109. Witnesses were present at the hearing for Barnett to cross-examine. The record does not indicate that he did so. *Id.* at 106-107. The record does show that Barnett objected to Carolyn Adams's testimony on the ground that her testimony was hearsay. This objection was overruled. *Id.* at 106. Barnett also objected to Tanalyn Hartless's testimony as hearsay grounds; this objection was sustained. *Id.* Barnett did not object to the neutrality of the hearing officer. *Id.* Barnett received a copy of the hearing report processing sheet and the revocation hearing report, showing that he had admitted to five of the six alleged violations of his mandatory supervision conditions and showing the reasons for revoking his mandatory supervision. *Ex parte Barnett*, at 102, 104. This report provided Barnett with a written statement of the evidence relied on and the reasons for the Board's action. *Morrissey*, 408 U.S. at 488-89.

Barnett asked for the appointment of counsel at his revocation hearing. The hearing officer refused the request because the issues were not complicated. In *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the Supreme Court declined to adopt a bright-line rule requiring the appointment of counsel at revocation hearings. The Court stated:

> We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness – the

15

> touchstone of due process – will require that the State provide at its expense counsel for indigent probationers or parolees.

*Id.* at 790. The Court noted that counsel should be provided if the parolee makes such a request, based on a timely and colorable claim that he has not committed the alleged violation or that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record. *Gagnon*, 411 U.S. at 790-91.

At the revocation hearing on May 2, 2002, the hearing officer questioned Barnett about his understanding of the proceedings. Barnett stated that he was not on psychotropic medications, that he could read and write, that he had his General Equivalency Diploma, that he had attended college, that he understood his rights during the interview held before the hearing, and that he understood the document he received before the hearing. The supervising parole officer testified that Barnett had not been diagnosed with a mental illness and was not on any medications, and that he appeared to understand his rights. The supervising parole officer testified that the allegations were not complicated because they involved merely technical violations. A review of the audio recording of the mandatory

supervision revocation hearing shows that the hearing officer told Barnett that the Board determined that Barnett was ineligible for the appointment of an attorney because the issues were not complicated. The hearing officer explained that Barnett did not qualify to have a state-appointed attorney at the hearing. The record provides no basis to conclude that the Board abused its "considerable discretion" in refusing his request to appoint counsel to represent him at the revocation hearing. *Ex parte Barnett,* Application No. 36,940-02 at 102, 107.

The state habeas trial court found that Edward McElyea, the Assistant Director of Preview and Release Processing Section of TDCJ- Parole Division, was a credible witness. McElyea stated that Barnett was advised of his rights in the revocation process, acknowledged those rights in writing, and showed in the prehearing interview that he could read, write, and understand his rights. *Ex parte Barnett,* Application No. 36,940-02 at 129. The state habeas court concluded that Barnett failed to meet his burden to show that an attorney should have been appointed to assist him in the revocation hearing. *Id*. at 130. The record shows that Barnett was capable of representing himself at the revocation hearing. Barnett presented his own testimony and objections, in oral and written form, during the evidentiary and adjustment phases of the hearing. The state court's decision to deny relief was not contrary to clearly established federal law as determined by the Supreme Court of the United States. The relief Barnett seeks is denied. 28 U.S.C. § 2254(d)(1).

Barnett next complains that the Board ignored his motion to reopen the hearing. The record shows that Barnett was notified of his right to file a motion to reopen the hearing. *Ex*

*parte Barnett,* Application No. 36,940-02 at 104. The Board advised Barnett that a hearing would be reopened in the following situations: (1) if there was new probative evidence on a material issue of fact or law, which in exercise of reasonable diligence was unavailable at the time of the hearing; (2) the findings of fact or conclusions of law are not supported by a preponderance of the credible evidence; or (3) the procedures followed in the hearing, review, or disposition of the case violate the law or rules of the Board.

On May 24, 2002, Barnett filed a motion to reopen asserting that: (1) he did not sign the contract prior to his release on mandatory supervision, so he was not bound by its terms; (2) he was improperly denied counsel; (3) he had not received formal notification of the revocation of his mandatory supervision by the supervising parole officer; and (4) his sentence expired on March 19, 2000, so the Board lacked authority to revoke his mandatory supervision in 2002. Kim B. Vernon, Director of Operations, found that Barnett had not presented grounds for reopening the hearing. (Docket Entry No. 12, Respondent's Motion for Summary Judgment, Ex. A, p. 6). On September 18, 2002, the Board concurred with Vernon's recommendation. (*Id.*). The Board notified Barnett of its decision in a letter dated October 7, 2002. (*Id.* at 5). The record shows no basis to conclude that this decision deprived Barnett of constitutionally protected rights.

The state court's decision to deny relief was not contrary to clearly established federal law as determined by the Supreme Court of the United States. The relief Barnett seeks is denied. 28 U.S.C. § 2254(d)(1).

## V.     Conclusion

Respondent's Motion for Summary Judgment, (Docket Entry No. 12), is GRANTED. Barnett's motion for summary judgment, (Docket Entry No. 16), is DENIED. Barnett's petition for a writ of habeas corpus is DENIED. This case is DISMISSED. Any remaining pending motions are DENIED as moot.

The Supreme Court has stated that the showing necessary for a Certificate of Appealability is a substantial showing of the denial of a constitutional right. *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)). Under that standard, an applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further. *See Clark v. Johnson,* 202 F.3d 760, 763 (5th Cir. 2000). Specifically, where a district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack,* 529 U.S. 484.

This court denies Barnett's petition after careful consideration of the merits of his constitutional claims. This court denies a COA because Barnett has not made the necessary showing for issuance.

SIGNED on May 13, 2005, at Houston, Texas.

*Lee H. Rosenthal*

19

_____
Lee H. Rosenthal
United States District Judge